566 So.2d 1338 (1990)
Phyllis GOLDSTEIN, Appellant,
v.
Arthur F. SERIO, Jr., Appellee.
No. 88-2060.
District Court of Appeal of Florida, Fourth District.
September 5, 1990.
Stay and Rehearing Denied October 19, 1990.
Charles Wender of Smith, Smith and Wender, P.A., Boca Raton, for appellant.
Charles W. Musgrove, West Palm Beach, for appellee.
POLEN, Judge.
Appellant Phyllis Goldstein (hereinafter referred to as Goldstein) and her husband Alvin owned a large three-bedroom intracoastal home in Palm Beach County. Alvin died in January 1984, leaving the home to *1339 appellant. The home had been assessed by the Palm Beach County Appraiser in 1983 for $239,800, with an outstanding mortgage of $55,000 on the property.
The Goldsteins had met appellee Arthur F. Serio, Jr. (Serio) around 1980. The Goldsteins and Serio played tennis together, were social friends, and Serio advised them occasionally concerning the sale of bonds, life insurance, and other financial matters.
Upon Alvin's death, Mrs. Goldstein became concerned as to possible claims against Alvin's estate by creditors and the IRS, and feared she might lose the house. Although there is disputed testimony as to how the transaction finally came to fruition, it is clear that appellant first approached appellee for assistance in coming up with a plan to help her avoid losing the house over the creditors' and IRS claims. Although both appellant and appellee had access to independent counsel, it appears only appellee consulted his attorney in connection with the proposed transaction. Appellant claimed that the nature of the transaction was such that Mrs. Goldstein would convey her home to Serio, and that there would be an "oral option" for her to repurchase the home at any time in the future, by the payment of a set price, together with the cost of any improvements Serio made after taking possession. There is further dispute between the parties as to the nature of the conveying instrument. Appellant claims it was a quitclaim deed, whereas appellee contends the conveyance was by warranty deed. The record does not disclose the existence of any quitclaim deed from appellant to appellee.
Appellee took possession of appellant's house in December 1984. Approximately nine months later, appellant became aware that appellee was making extensive renovations, in the amount of $90,000, to the home. She did not pose any objection to the renovations. Of course, when appellant sought to exercise her "oral option" agreement, a dispute arose between the parties as to the nature of any such agreement, and the price that appellant would have to pay if she wished to repurchase the home. Much of the evidence concerned extensive repairs that had to be made on the home by appellee.
Appellant filed a five-count complaint against appellee. Included were counts for rescission, fraud, negligence, injunctive relief, and that the alleged option agreement was a usurious agreement in violation of Florida statutes. Appellant alleged that appellee enjoyed a confidential relationship as to appellant's financial and property matters, and that he was in the position of a fiduciary as to the transaction concerning appellant's former house.
In due course, the matter was set for jury trial.
Shortly before trial, and upon motion by appellee, over appellant's objections, appellant was ordered by the trial court to elect her remedies. Appellant thereupon elected to proceed on the first count, sounding in rescission. The matter was then heard as a bench trial on the equitable remedy, and resulted in the adverse judgment here under appeal. We reverse.
Appellant raises as her first point on appeal, that the trial court erred in compelling her to elect remedies at the calendar call, prior to the commencement of the trial. She further contends that she was thus denied a constitutional right to trial by jury as well as the right to proceed on her actions at law. We agree that the trial court erred in this regard. In Security and Investment Corp. of the Palm Beaches v. Droege, 529 So.2d 799 (Fla. 4th DCA 1988), this court explained the doctrine of election of remedies. The court stated:
The doctrine of election of remedies is a technical rule of procedure or judicial administration, used by the courts to prevent double recoveries for a single wrong. 25 Am.Jur.2d Election of Remedies § 1 (1971). Application of the doctrine can serve as an instrument of injustice when an election of a remedy turns out to be unavailable, and yet it is held to bar pursuit of another remedy. Prior to imposing the doctrine, courts should carefully consider the facts of each case. 25 Am.Jur.2d Election of Remedies § 3. See Williams v. Robineau, 124 Fla. 422, 168 So. 644 (1936).

*1340 If the two remedies are inconsistent or mutually exclusive, so that one implies negation of the underlying facts necessary for the other, then the mere choice of one remedy and certainly, pursuit of one remedy to judgment, operates as an election. 25 Am.Jur.2d Election of Remedies §§ 10-11 (1971); 1 Fla.Jur.2d Actions § 155 (1980); Villeneuve v. Atlas Yacht Sales, Inc., 483 So.2d 67 (Fla. 4th DCA 1986); approved, 505 So.2d 1331 (Fla. 1987); American Process Co. v. Florida White Pressed Brick Co., 56 Fla. 116, 47 So. 942 (1908); Bliss and Laughlin Industries, Inc. v. Malley, 364 So.2d 65 (Fla. 4th DCA 1978). However, if the remedies are concurrent or cumulative, and logically can coexist on the same facts, the doctrine of election does not apply until the injured party has received full satisfaction for his injuries. 25 Am.Jur.2d Election of Remedies § 12 (1971); 1 Fla.Jur.2d Actions § 156 (1980); Williams v. Robineau, supra; Klondike, Inc. v. Blair, 211 So.2d 41 (Fla. 4th DCA 1968). Or, if the remedies address different and distinct rights or redress different wrongs, the doctrine of election has no application. 25 Am.Jur.2d Election of Remedies §§ 10-11 (1971); Williams v. Robineau, supra; 1 Fla. Jur.2d Actions § 157 (1980).
See also Barbe v. Villeneuve, 505 So.2d 1331 (Fla. 1987). While appellant certainly could not recover more than once for the damages she was pursuing against appellee, nor could she succeed on mutually exclusive causes of action, she had the right in our view to proceed to a jury trial on those alternative theories which are triable by a jury. The trial court could amply instruct the jury on the concept of alternative pleading, and that the plaintiff could not recover more than once for her alleged damages at law. Upon the close of the plaintiff's case, if plaintiff failed to prove any of her causes of action, the trial court would have the option of granting a directed verdict in favor of the defendant upon motion. Finally, it is conceivable that the election of remedies in this case would not be required to be made until after the jury had rendered its verdict. For example, an interrogatory form of verdict could be fashioned so that the jury would be required to resolve specific issues of fact in dispute between the parties. Such a form of verdict could also include damages due to the plaintiff, if any were to be awarded. Thereafter, the plaintiff would be required to elect her remedy (or remedies, if not inconsistent), with the jury's findings of fact being binding as it would affect the various legal and equitable claims.
However, in this case the trial court jumped the gun by requiring the election of remedies to be made before the jury trial even commenced. We hold that, given the facts of this case, and the nature of the relief sought by appellant, the trial court committed reversible error in requiring the election to be made prematurely. We therefore reverse and remand for a new trial consistent with this opinion.
We find no error in the remaining points raised on this appeal.
ANSTEAD and GLICKSTEIN, JJ., concur.