*918
 
 LAGOA, Judge.
 

 Flagship Resort Development Corporation (“Flagship”) appeals from a final judgment granting Interval International, Inc. (“Interval”) summary judgment in Flagship’s action seeking a declaration that the contract between the two parties is not in force, or in the alternative, that Interval breached the implied covenant of good faith and fair dealing. Flagship further appeals from the trial court’s order granting Interval leave to amend its answer to assert a claim for attorneys’ fees. For the following reasons, we affirm on all points.
 

 I.
 
 FACTUAL AND PROCEDURAL HISTORY
 

 Flagship is the developer of an interval ownership resort in Atlantic City, New Jersey (“Resort”).
 
 [1]
 
 Interval is in the business of providing time share exchange services to developers and interval owners. On September 1, 1993, Flagship and Interval entered into a Resort Affiliation Agreement (“RAA”) that provided for the inclusion of the Resort in the “Interval Network.” The RAA defined the “Interval Network” as “a vacation exchange service to facilitate the exchange of accommodations between owners of time share or other vacation ownership interests at participating resorts.”
 

 Interval’s contractual duties are enumerated in Section (D)(1) of the RAA, which obligates Interval to provide:
 

 (a) affiliation for the PROJECT [the Resort] in the INTERVAL NETWORK upon such terms and conditions as are set forth in this agreement;
 

 (b) an exchange program for use by Individual Members in accordance with the Terms and Conditions of Individual Membership and Exchange as they exist from time to time;
 

 (c) promotional materials, for use by AFFILIATE [Flagship] in accordance with this Agreement, at time of affiliation and thereafter such additional materials as INTERVAL may make available from time to time at INTERVAL’S published rates for such materials;
 

 (d) travel-related benefits, privileges and discounts for Individual Members enrolled from the PROJECT [the Resort] who are in good standing with INTERVAL; and
 

 (e) V.I.P. memberships for use by AFFILIATE [Flagship] in accordance with the terms and conditions of such memberships as they exist from time to time.
 

 In Section (D)(4)(a) of the RAA, Interval reserved the right to modify the terms and conditions of the Interval Network:
 

 The terms and conditions of the INTERVAL NETWORK, including, but not limited to, the Terms and Conditions of Individual Membership and Exchange, may be changed by INTERVAL from time to time in its sole discretion.
 

 The initial term of the RAA was ten years, i.e., through and including August 31, 2003. The RAA provided for automatic renewals of equal duration in Section (B) of the contract:
 

 The initial term of this Agreement is for ten (10) years from the date of execution by INTERVAL. Thereafter, this Agreement will automatically renew for additional periods of ten (10) years each unless either Party gives to the other at least ninety (90) days advance written notice of its intent not to renew.
 

 With respect to notices, the RAA further provided in Section (L)(l):
 

 All notices provided for by this Agreement shall be deemed given if in writing and delivered by hand, air express, or by
 
 *919
 
 registered or certified mail, return receipt requested, to the addresses set forth on page one of this Agreement or to such other address as may be specified in accordance with this procedure.
 

 Pursuant to Section (B), the RAA would automatically renew for a second term of ten years on September 1, 2003. Accordingly, any party that intended to permit the RAA to expire at the end of the initial term was obligated to provide written notice of its intent not to renew to the other party on or before May 31, 2003 (the “Auto Renewal Date”).
 

 In January 2001, Flagship and Interval began negotiating a new affiliation agreement, referred to in successive drafts as a “Master Affiliation Agreement” (“MAA”). Flagship characterizes the ensuing negotiations as pertaining to the renewal of the RAA, while Interval distinguishes the MAA as a more complex agreement separate from the existing RAA associated with the Resort. It is undisputed that the MAA contemplated the inclusion of other Flagship properties, in addition to the Resort, in the Interval Network.
 

 Relevant here are the discussions between Flagship and Interval regarding the duration of the MAA. Interval initially proposed a ten-year term; however, Flagship did not wish to be bound for ten years. Accordingly, Flagship’s Chief Operating Officer, Alan Rosefielde, wrote to Interval in a March 16, 2003 memorandum (“Rosefielde Memo”): “The term is ridiculously long — 10 years with two ten-year renewals.” The Rosefielde Memo also highlighted other terms of the MAA for further discussion and referenced two other Flagship properties within the ambit of the MAA. Interval ultimately offered a six and one-half year term on February 4, 2004. Flagship rejected the offer.
 

 While Flagship and Interval were negotiating the terms of the MAA, the RAA’s Auto Renewal Date passed. On April 13, 2004, Interval informed Flagship that the RAA had automatically renewed for a second ten-year term, i.e., through and including August 31, 2013. Flagship responded by claiming no contract existed between the parties. Flagship and Interval continued to negotiate the MAA until at least April 2004, but never reached an agreement. Flagship contends that its relationship with Interval continued on an at-will basis, while Interval asserts that the parties continued to perform under the renewed RAA.
 
 [2]
 
 It is undisputed that the parties continued to do business together, as evidenced by several other agreements between the parties executed after September 1, 2003.
 
 [3]
 

 Separate from the issues relating to the renewal of the RAA are issues arising out of Interval’s “Five Star” rating program. At least since Flagship affiliated the Re
 
 *920
 
 sort with Interval in 1993, Interval has administered a “Five Star” rating program for the purpose of recognizing affiliated properties that receive high guest satisfaction scores. Although the RAA requires Flagship to establish a program to maintain “high standards of service, appearance, cleanliness, quality and management” and provides for inspections of the Resort by Interval in Section (E)(5) of the RAA, the RAA does not mention or obligate Interval to administer the “Five Star” rating program.
 

 Nevertheless, throughout the RAA’s initial term, Interval classified the Resort as a “Five Star” resort in the Interval Network. The parties agree the Resort never met the criteria established by Interval for the rating. On November 3, 2005, Interval notified Flagship that the Resort would not receive a Five Star rating in an upcoming publication. Interval suggested that Flagship could improve its guest satisfaction scores by permitting Interval to upgrade and manage the Resort’s reservation system. The upgraded reservation system offered by Interval was expensive and Flagship refused to purchase the system.
 

 On August 31, 2007, Flagship filed a two-count complaint against Interval, which it later amended. The amended complaint in Count I sought a declaration that no contract existed between Flagship and Interval because: (1) the RAA is illusory since Interval could change the terms and conditions at its discretion; (2) the RAA expired by its own terms; or (3) that Interval is equitably estopped from asserting that the RAA automatically renewed. In the alternative, in Count II, the amended complaint sought damages for breach of the implied covenant of good faith and fair dealing based on Flagship’s loss of its “Five Star” rating. Both Flagship and Interval moved for summary judgment.
 

 Three days prior to the summary judgment hearing, Interval filed a demand for attorneys’ fees. After the hearing, but prior to entry of final judgment, Interval moved to amend its answer to claim attorneys’ fees. Flagship moved to strike the demand and opposed the motion. On November 25, 2008, the trial court permitted the amendment.
 

 On January 8, 2009, the trial court granted Interval’s motion for summary judgment. As to Count I, the trial court found: first, that the RAA, which had been performed by both parties for fifteen years, was not illusory; second, that the Rosefielde Memo was insufficient to constitute written notice under Section (B) of the RAA; and third, that Interval was not equitably estopped from claiming the RAA automatically renewed because Interval made no representation from which Flagship could reasonably conclude that it was relieved of its duty to notify Interval of its intent not to renew the RAA. As to Count II, the trial court found that Interval’s revocation of the Resort’s Five Star rating did not constitute a breach of the implied covenant of good faith and fair dealing because the Five Star program was a corollary program not anchored to one of Interval’s contractual obligations under the RAA. Upon entry of a final summary judgment in favor of Interval, the trial court reserved jurisdiction to determine Interval’s entitlement to attorneys’ fees and costs.
 

 This appeal ensued.
 

 II.
 
 STANDARD OF REVIEW
 

 A.
 
 Summary Judgment
 

 Summary judgment is proper if there is no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000). “Where the de
 
 *921
 
 termination of the issues of a lawsuit depends upon the construction of a written instrument and the legal effect to be drawn therefrom, the question at issue is essentially one of law only and determinable by entry of summary judgment.”
 
 Id.
 
 at 131 (citations omitted). We review a trial court’s ruling on a motion for summary judgment
 
 de novo. Id.
 
 at 130. In addition, a trial court’s decision construing a contract presents an issue of law that is subject to the
 
 de novo
 
 standard of review.
 
 Florida Power Corp. v. City of Casselberry, 793
 
 So.2d 1174, 1178 (Fla. 5th DCA 2001).
 

 B.
 
 Leave to Amend to Add Claim For Attorneys’ Fees
 

 “Leave of court [to amend a pleading] shall be given freely when justice so requires.” Fla. R. Civ. P. 1.190(a). Indeed, the decision to grant leave to amend is within the discretion of the trial court, and any doubts are to be resolved in favor of the amendment.
 
 Overnight Success Constr., Inc. v. Pavarini Constr. Co., Inc.,
 
 955 So.2d 658, 659 (Fla. 3d DCA 2007). Accordingly, we review an order granting a motion to amend for abuse of discretion.
 
 Id.
 

 III.
 
 ANALYSIS
 

 A. Summary Judgment as to Count I
 

 With respect to Count I of its amended complaint, Flagship contends that the RAA is unenforceable for three separate reasons. We address each of Flagship’s arguments in turn.
 

 1.
 
 Failure of Consideration
 

 Flagship contends that Interval’s reservation of the right to modify the terms and conditions of the Interval Network “from time to time in its sole discretion” renders the contract illusory because all of Interval’s contractual duties relate to the Interval Network. Flagship’s argument is essentially failure of consideration, because in a bilateral contract a promise that permits the promisor to fulfill or decline to fulfill its contractual obligations at its option is not binding on the promisor and renders the promise incapable of enforcement by the promisee.
 
 Pan-Am Tobacco Corp. v. Dep’t of Corrs.,
 
 471 So.2d 4, 5 (Fla.1984) (“[A] contract which is not mutually enforceable is an illusory contract.”);
 
 Rosenberg v. Lawrence,
 
 541 So.2d 1204, 1206 (Fla. 3d DCA 1988) (‘Where one party retains to itself the option of fulfilling or declining to fulfill its obligations under the contract, there is no valid contract and neither side may be bound.”).
 

 At the outset, we reject Flagship’s argument to the extent that it relies on the fact that Interval’s contractual duties to Flagship are set forth in Section (D)(1) of the RAA, and Section (D), as a whole, is titled “Interval Network.” Besides the fact that Section (D) also addresses Flagship’s duties to Interval under the RAA, the express language of Section (L)(8) of the RAA provides: “The headings and captions in this Agreement are for convenience only and shall not be referred to in the interpretation of this Agreement.”
 

 As set forth above, Section D(l) of the RAA delineates specific contractual duties owed by Interval to Flagship. None of these duties comprise the terms and conditions of the Interval Network itself. If Interval wishes to alter any of its obligations under Section (D)(1), Section L(ll) of the RAA requires Interval to obtain Flagship’s consent and to reduce it to writing.
 
 [4]
 
 In contrast, Section D(4) of the RAA
 
 *922
 
 reserves to Interval its ability to modify the terms and conditions of the Interval Network. Interval’s modification of the Network, however, would not relieve it of its obligations to Flagship under Section D(l). Thus, Interval’s promise to perform the duties set forth in Section (D)(1) of the RAA is not a mere “I will if I want to.”
 
 E.g., Rosenberg,
 
 541 So.2d at 1207. Rather, Interval’s Section (D)(1) duties are binding obligations, the violation of which entitles Flagship to a remedy under Section (I)(l) of the RAA.
 
 [5]
 
 Thus, because Interval’s promise to perform the duties enumerated in Section (D)(1) is not subject to the Section (D)(4) reservation of its right to change the terms and conditions of the Interval Network, the RAA is binding on Interval, capable of enforcement by Flagship, and is not illusory.
 

 Moreover, the fact that Flagship and Interval have performed according to the terms of the RAA for more than fifteen years is a separate basis to conclude that the RAA is enforceable. Even assuming a lack of mutuality of obligation at the inception of the contract, “such defect may be cured by the subsequent conduct of the parties.”
 
 Wright & Seaton, Inc. v. Prescott,
 
 420 So.2d 623, 627 (Fla. 4th DCA 1982) (quoting 17 C.J.S.
 
 Contracts
 
 § 100(3), at 799-800 (1963));
 
 see also Ponce Dev. Co. v. Espino,
 
 449 So.2d 317, 319 (Fla. 3d DCA 1984);
 
 Clark v. State,
 
 651 So.2d 1309, 1310 (Fla. 3d DCA 1995).
 

 Flagship relies on
 
 Espino
 
 for the proposition that only full and complete performance will cure a lack of mutuality of obligation.
 
 See Espino,
 
 449 So.2d at 318-19. We find Flagship’s argument unpersuasive, as this Court in
 
 Espino
 
 found that less-than-full or substantial performance was sufficient to cure a lack of mutuality of obligation in appropriate circumstances.
 
 See Espino,
 
 449 So.2d at 319.
 

 Further, Flagship’s argument ignores the fact that here,
 
 both
 
 parties have performed according to the RAA for more than fifteen years.
 
 [6]
 
 Therefore, even if the RAA lacked mutuality at its formation, the RAA has been performed by both sides. Because we are dealing with an executed contract, “lack of mutuality presents no impediment to the executed contract.”
 
 Murry v. Zynyx Mktg. Commc'ns,
 
 774 So.2d 714, 716 (Fla. 3d DCA 2000). Accordingly, we hold that any purported lack of mutuality in the formation of the RAA has been cured by the parties’ subsequent performance according to the terms of the agreement.
 
 [7]
 

 2.
 
 Written Notice of Intent Not to Renew
 

 Flagship argues that because it gave timely written notice to Interval of its intent not to renew pursuant to Section (B) of the RAA, the contract expired by its own terms. Flagship points to the March 16, 2003 Rosefielde Memo as constituting written notice of its intent not to renew the RAA. Construing the language of the RAA “most strongly against its drafter,” Interval,
 
 see Berloni v. Della Casa, LLC,
 
 972
 
 *923
 
 So.2d 1007, 1010 (Fla. 4th DCA 2008), we find the language of the Rosefielde Memo insufficient to communicate any intent on the part of Flagship to permit the RAA to expire at the end of its initial term. To the contrary, the Rosefielde Memo indicates that Flagship was willing to engage in further negotiations concerning its continued relationship with Interval, and even to expand that relationship to include affiliation of other Flagship properties under the MAA. Flagship points to no other document as constituting written notice of its intent not to renew, nor do we find any document in the record sufficient to convey to Interval Flagship’s intent not to renew the RAA.
 
 [8]
 
 Accordingly, we conclude that Flagship failed to provide Interval notice of its intent not to renew the RAA, and therefore, the contract did not expire by its terms.
 
 [9]
 

 3.
 
 Equitable Estoppel
 

 Flagship argues that, because Interval’s conduct throughout the negotiation of the MAA led Flagship to believe it need not give notice under Section (B) of the RAA, Interval is equitably estopped from asserting that the RAA renewed. With respect to the issue, we find that equitable estoppel is not a cause of action, but an affirmative defense.
 
 See Major League Baseball v. Morsani,
 
 790 So.2d 1071, 1076 (Fla.2001) (equitable estoppel is a defensive doctrine);
 
 Dep’t of Transp. v. First-Merit Bank,
 
 711 So.2d 1217, 1218 (Fla. 2d DCA 1998). Thus, as a matter of law, it is not a proper cause of action, and summary judgment was proper on this point alone.
 

 Nonetheless, even if equitable estoppel were an offensive doctrine, Flagship failed to satisfy the first requisite element for estoppel. The elements of equitable estoppel are as follows:
 

 (1) a representation by the party es-topped to the party claiming the estop-pel as to some material fact, which representation is contrary to the condition of affairs later asserted by the estopped party; (2) a reliance upon this representation by the party claiming the estop-pel; and (3) a change in the position of the party claiming the estoppel to his detriment, caused by the representation and his reliance thereon.
 

 Greenhut Constr. Co. v. Henry A. Knott, Inc.,
 
 247 So.2d 517, 524 (Fla. 1st DCA 1971);
 
 see also Winans v. Weber,
 
 979 So.2d 269, 274-75 (Fla. 2d DCA 2007). A representation may take the form of words, acts, or “[cjonduct calculated to convey a misleading impression.”
 
 Francoeur v. Pipers, Inc.,
 
 560 So.2d 244, 245 (Fla. 3d DCA 1990);
 
 see also Morsani,
 
 790 So.2d at 1076. A review of the record below reveals no representation by Interval in word, act, or conduct, that reasonably indicated to Flagship that it was relieved of its obligation to give Interval timely written notice of its intent not to renew the RAA. Rather, the discussions between the parties were characterized by an apparently mutual desire to continue and expand the affiliation relationship.
 

 
 *924
 
 Accordingly, for the reasons stated, we conclude that final summary judgment in favor of Interval was proper as to Count I of Flagship’s Amended Complaint.
 

 B.
 
 Summary Judgment as to Count II
 

 With respect to Count II of its amended complaint, Flagship contends, in the alternative, that Interval breached an implied covenant of good faith and fair dealing by revoking Flagship’s Five Star resort rating. We find Flagship’s argument without merit. First, the doctrine of implied covenant of good faith cannot be used to vary the terms of an express contract. “A duty of good faith must relate to performance of an express term of the contract and is not an abstract and independent term of a contract....”
 
 Beach Street Bikes, Inc. v. Bourgett's Bike Works, Inc.,
 
 900 So.2d 697, 700 (Fla. 5th DCA 2005). Indeed, it must be anchored to the performance of an express contractual obligation.
 
 See Meruelo v. Mark Andrew of Palm Beaches, Ltd.,
 
 12 So.3d 247, 250 (Fla. 4th DCA 2009);
 
 Snow v. Ruden, McClosky, Smith, Schuster & Russell, P.A.,
 
 896 So.2d 787, 792 (Fla. 2d DCA 2005) (“There can be no cause of action for a breach of the implied covenant absent an allegation that an express term of the contract has been breached.”) (internal quotations omitted).
 

 Flagship has failed to identify, and this Court cannot find, any provision of the RAA that expressly obligates Interval to administer any affiliated resort rating program, much less confer a “Five Star” rating on the Resort. Because the RAA did not impose any duty on Interval to confer a Five Star resort rating (or any rating for that matter), Flagship failed to state a cause of action for breach of the implied covenant of good faith. Accordingly, we conclude that summary judgment for Interval was proper on Count II of Flagship’s Amended Complaint.
 

 C.
 
 Leave to Amend to Add Claim For Attorneys’ Fees
 

 With respect to Flagship’s contention that Interval waived its claim for attorneys’ fees, the sole issue raised on appeal is whether the trial court abused its discretion in granting Interval leave to amend its answer to assert a claim for attorneys’ fees.
 
 See
 
 Fla. RApp. P. 9.110(h). We conclude that the trial court did not abuse its discretion.
 

 While it is true that a claim for attorneys’ fees, whether based on contract or statute, must be pled prior to final judgment to avoid a waiver, we conclude that no waiver occurred here.
 
 See Stockman v. Downs,
 
 573 So.2d 835, 837-38 (Fla.1991) (denying postjudgment motion for attorneys’ fees where claim was not before the court prior to final judgment);
 
 Chittenden v. Boyd,
 
 669 So.2d 1136, 1138 (Fla. 4th DCA 1996) (declining to award attorneys’ fees where claim was not pled and party seeking award did not move to amend pleading prior to entry of final judgment).
 

 A review of the record establishes that Interval sought and obtained leave to amend its answer to seek attorneys’ fees prior to the entry of final judgment. As such, we reject Flagship’s argument and conclude that the trial court did not abuse its discretion by granting Interval leave to amend.
 
 See
 
 Fla. R. Civ. P. 1.190(a) (“Leave of court [to amend a pleading] shall be given freely when justice so requires.”);
 
 Overnight Success Constr., Inc. v. Pavarini Constr. Co., Inc.,
 
 955 So.2d 658, 659 (Fla. 3d DCA 2007) (any doubts should be resolved in favor of the amendment).
 

 
 *925
 
 IV.
 
 CONCLUSION
 

 For the foregoing reasons, we affirm the trial court’s final summary judgment in favor of Interval on Counts I and II of Flagship’s Amended Complaint. We likewise affirm the trial court’s order granting Interval leave to amend its answer to assert a claim for attorneys’ fees.
 

 Affirmed.
 

 [1]
 

 . Interval ownership is commonly known as “time share."
 

 [2]
 

 . Successive drafts of the MAA (sent before and after September 3, 2003) acknowledged the continued viability of the RAA: “The Flagship Resort has been affiliated with the INTERVAL NETWORK, pursuant to that certain Resort Affiliation Agreement between INTERVAL and AFFILIATE [Flagship], with an effective date of September 1, 1993 ... [and] upon the Effective Date of this Agreement, said Flagship RAA shall be deemed terminated and its terms and conditions null and void."
 

 [3]
 

 . We note that these agreements both acknowledge the RAA and further reserve to Interval the right to terminate if the RAA "is not in full force and effect." Flagship points out that subsequent agreements were executed only after Flagship’s Chief Executive Officer, Bruce Kaye, struck the language imposing a lengthy term and penciled in a reduced term acceptable to Flagship. Significantly, Mr. Kaye failed to strike the provisions acknowledging the continued existence of the RAA — although he expressly modified other provisions.
 

 [4]
 

 . Section (L)(ll) provides: “This Agreement ... may not be modified, except in writing
 
 *922
 
 signed by all Parties.”
 

 [5]
 

 . Section (I)(l) provides: "A Party shall be entitled to damages which it has incurred and injunctive or other equitable relief for any violation by the other Parly of the provisions of this Agreement.”
 

 [6]
 

 . And, insofar as the initial term of the RAA is concerned, Interval fully performed. It defies logic to conclude that the renewed RAA is illusory where the initial term of the RAA has already been fully performed and the language of the RAA has not changed.
 

 [7]
 

 .We note that Interval's performance has benefitted Flagship for more than fifteen years.
 

 [8]
 

 . The record, however, is replete with indications that Flagship understood that the RAA, in fact, automatically renewed at the conclusion of the initial term, including Mr. Kaye's testimony in his lawsuit against Mr. Rose-fielde that "I ... allowed the ten year renewal to kick in,” as well as the documents acknowledging the continued viability of the RAA referenced herein.
 
 See supra
 
 notes 2-3.
 

 [9]
 

 . Because we conclude that the Rosefielde Memo is insufficient to constitute “written notice of [Flagship’s] intent not to renew” the RAA, we need not consider whether the Rose-fielde Memo complied with other applicable provisions of the RAA, namely, the specified delivery provision found in Section (L)(8) of the RAA.