# Third District Court of Appeal

## State of Florida

Opinion filed March 13, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D22-1292, 3D23-0311
Lower Tribunal No. 18-16016
_____

## North Bay Green Investments, LLC, etc., et al.,

Appellants/Cross Appellees,

vs.

## Cold Pressed Raw Holdings, LLC, etc., et al.,

Appellees/Cross-Appellants.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Alvarez, Feltman, Da Silva & Costa, PL and Paul B. Feltman; AM Law, LLC., and Gary M. Murphree, for appellants/cross-appellees.

Rosenthal Rosenthal Rasco LLC, Eduardo I. Rasco, and Steve M. Bimston (Aventura), for appellees/cross-appellants.

Before FERNANDEZ, GORDO and LOBREE, JJ.

FERNANDEZ, J.

In Case Number 3D22-1292, defendants North Bay Green Investments, LLC ("North Bay") and Green Holdings, LLC (collectively, "appellants") appeal the trial court's Final Judgment entered in favor of plaintiff Cold Pressed Raw Holdings, LLC ("CPR Holdings"). CPR Holdings and Alberto Peisach ("Mr. Peisach"), former counterclaim defendant/cross-appellant, cross-appeal the same Final Judgment. In Case Number 3D23-0311, the same appellants appeal the trial court's Final Judgment Awarding Attorneys' Fees and Costs to the same appellees. The two cases were consolidated for purposes of traveling together before the same panel.

With respect to Case Number 3D22-1292, we affirm the Final Judgment in all respects on the main appeal. As to the cross-appeal, we reverse the Final Judgment in part and remand for judgment to be entered in favor of CPR Holdings and against defendant Mr. Federico Intriago individually on Count I of CPR Holdings's complaint and for judgment to be entered in favor of Mr. Peisach and against appellants on Count VI of appellants' third amended counterclaim as well as the "related separate pending Complaint" referenced in the Final Judgment. As to Case Number 3D23-0311, we affirm the Final Judgment on attorneys' fees and costs.

## FACTS AND PROCEDURAL HISTORY

2

On November 13, 2015, CPR Holdings and North Bay entered into the Operating Agreement of Green Holdings, LLC ("Operating Agreement"). Federico Intriago ("Mr. Intriago") owned North Bay. Tatiana Peisach ("Ms. Peisach") and her father, Alberto Peisach ("Mr. Peisach"), owned CPR Holdings. Green Holdings, LLC ("Green Holdings") was a holding company created for the parties' joint venture operating a business that manufactured organic juices using a special "Hiperbaric 55" machine owned by Green Plant. Green Holdings was owned 50% by CPR Holdings and 50% by North Bay.

The Operating Agreement lists the respective contributions of subsidiary companies by CPR Holdings and North Bay into Green Holdings. It further indicated that as of November 13, 2015, CPR Holdings contributed Cold Pressed Raw Beverages, LLC ("CPR Beverages") and CPR IP Assets, LLC. North Bay contributed Green Plant, LLC ("Green Plant"). CPR Holdings and North Bay warranted to each other the amount of assets held by each subsidiary that were being contributed to Green Holdings, as outlined in Schedules 1a and 1b attached to the Operating Agreement.

The Operating Agreement also limited the parties' abilities to unilaterally dispose of any subsidiary or its assets without formal approval by Green Holdings. Section 2.8(b) expressly granted Mr. Intriago with authority

3

as a signatory with full access to all the bank accounts of each subsidiary.

Section 2.2(a) designated Mr. Intriago as the North Bay director. The Operating Agreement also discussed how Green Holdings would sell the assets of any of its subsidiaries and how the proceeds would be distributed. Thereafter, the parties mutually agreed to end the joint venture and to separate each of their businesses. To that end, on August 10, 2017, a Settlement Agreement was executed by Green Holdings, CPR Holdings, North Bay, Ms. Peisach, Miguel Robledo, and Mr. Intriago. The Settlement Agreement attaches supplemental documents which, together with the agreement, govern the parties' rights and obligations, including a Promissory Note, Security Agreement (Chattel Mortgage), and Continuing Guaranty. The Settlement Agreement indicated a transfer by CPR Holdings of its 50% ownership interest in Green Holdings to North Bay. In exchange, North Bay would pay CPR Holdings $200,000.00. Section 2(a) of the Agreement indicates that the purchase price was "to be paid by Intriago, as follows" and subsections 2(a)(i) and (ii) indicate that North Bay was required to pay the $200,000 by making quarterly payments of $25,000.00 each pursuant to a promissory note. The sum of $25,000 was due at closing with the remaining $175,000 balance payable in seven quarterly installments of $25,000 each.

4

Subsection 2(b)(i) outlined the documents that CPR Holdings was obligated to deliver at closing.

Subsection 4(g) of the Settlement Agreement outlines CPR Holdings and Ms. Peisach's representations that there were no currently outstanding liabilities of CPR Beverages arising before closing of the Agreement, except for liabilities to Peisach family members, for which they were responsible. The Settlement Agreement does not refer to CPR Beverages or its assets anywhere else in the agreement.

In addition, the Settlement Agreement required Green Plant to execute a security agreement in favor of CPR Holdings encumbering Green Plant's "Hiperbaric 55" machine as collateral to secure North Bay's obligation to repay the Promissory Note. Section 9 states that the Settlement Agreement binds and benefits the named parties as well as "their respective predecessors, successors, administrators, representatives, agents, officers, directors, assigns, general partners, limited partners, members, managing members, parents, subsidiaries, affiliates and insurers." In Section 14, the parties agree that as sophisticated businessmen, they were signing the Agreement voluntarily and without coercion. They represented that even if the facts that they relied upon in executing the agreement turn out to be different, the Settlement Agreement will remain in full force and effect. The

Settlement Agreement also contained an express jury trial waiver. Furthermore, Section 16 of the Settlement Agreement provides for attorneys' fees to the prevailing party in any action to enforce the terms and provisions of the Settlement Agreement.

Attached to the Settlement Agreement is a Mutual Release that waives all claims relating to the operation and management of Green Holdings and its subsidiaries and the business relationships between one another. The Release incorporates the Settlement Agreement terms. The Release further outlines representations made by the parties that there was no understanding for any future or further consideration either implied and/or expected. The parties confirmed under penalty of perjury that the representations of the Release and Settlement Agreement were true and correct. Mr. Intriago signed the Release individually and on behalf of Green Holdings and North Bay.

Thereafter, on August 11, 2017, CPR Holdings transferred its 50% ownership interest in Green Holdings to North Bay. Mr. Intriago remitted the first $25,000 payment to CPR Holdings on August 17, 2017. He then executed the Note as manager on North Bay's behalf. North Bay's first quarterly payment of $25,000 under the Promissory Note was due in November 2017, but it never made the payment.

6

CPR Holdings then filed the underlying lawsuit against North Bay, Green Holdings, Green Plant, and Mr. Intriago in May 2018 for breach of the Settlement Agreement. The complaint alleged Count I for breach of the Settlement Agreement against North Bay and Mr. Intriago; Count II for breach of the Promissory Note against North Bay; Count III for foreclosure of a security interest against Green Plant; and Count IV for breach of a continuing guaranty against Green Holdings. CPR Holdings did not demand a jury trial. Appellants moved to dismiss the action, which the trial court denied.

Appellants filed their Answer, as well as initial counterclaims, first amended counterclaims, and second amended counterclaims. Appellants demanded a jury trial in their counterclaims and did not seek relief regarding CPR Beverages's assets. The trial court dismissed each iteration of the counterclaims.

Thereafter, appellants filed a third amended counterclaim alleging one count of fraudulent inducement and two breach of contract claims (Count II for breach of the Settlement Agreement against CPR Holdings and Ms. Peisach and Count III for breach of the covenant of good faith and fair dealing against CPR Holdings and Ms. Peisach). In the breach of contract counts, appellants agreed that the Settlement Agreement was a valid and

7

enforceable contract, thus they sought damages for its alleged breach. Appellants alleged that the Settlement Agreement required CPR Holdings and Ms. Peisach to transfer the assets of CPR Beverages to North Bay. In Count IV, appellants sued to set aside the Settlement Agreement and Mutual Release as voidable due to duress and coercion. Count V alleged appellants' rescission counterclaim. Count VI alleged fraudulent inducement into the Green Joint Venture against Mr. Peisach. Count VII alleged fraudulent inducement into the Green Joint Venture against Ms. Peisach. Then for the first time, appellants included a claim for breach of fiduciary duty against Ms. Peisach in Count VIII. Appellants again did not allege that prompt notice of their belief that the Settlement Agreement was unenforceable was given to CPR Holdings. Appellants again demanded a jury trial. Appellees moved to dismiss the counterclaims and third-party claims with prejudice.

After a hearing on this latest motion, the trial court granted it in part. The court allowed Counts IV and V to set aside the Settlement Agreement and for rescission to remain pending. It then severed Counts II and III for the breach of contract counterclaims and stayed them, pending resolution of the rescission claims in Counts IV and V. The trial court dismissed Counts I, VI, VII, and VIII without prejudice pending resolutions of Counts IV and V.

Appellants filed a motion for rehearing, which the trial court denied. Appellants did not appeal the dismissal of Count VI.[1]

Mr. Intriago then filed a motion for summary judgment as to Count I of CPR Holdings complaint. He contended that the Settlement Agreement section regarding the purchase price to be paid by him was contradicted by subsequent provisions requiring North Bay to pay under the Promissory Note and Green Holdings under the Continuing Guaranty. CPR Holdings responded that Mr. Intriago executed the Settlement Agreement in his individual capacity and that his payment of the initial $25,000.00 due under the Settlement Agreement in his individual capacity was undisputed. Appellees further argued that section 9 of the Settlement Agreement made the provisions of the agreement binding on the agents, representatives, and managing members of the corporate parties.

---

[1] North Bay and Mr. Intriago then filed a separate lawsuit on August 4, 2020 (trial court case no. 20-016471-CA-01 (02)) against Mr. Peisach and alleged the same fraudulent inducement claim based on the same allegations made in Count VI of appellants' third amended counterclaim. This is the "related separate pending Complaint" the trial court referenced in the Final Judgment. After Mr. Peisach's motion filed in the related case, the trial court entered an order in November 2020 in which the court: a) granted consolidation of the related case with the case below; b) stayed and/or abated the related case "pending resolution of counts 4 and 5 of the Defendants' third amended counterclaim" filed below; and c) acknowledged that the related case will be dismissed with prejudice if the trial court denied appellants' rescission counterclaims in the case below.

9

After the trial court's hearing on the summary judgment motion, the trial court granted Mr. Intriago's motion as to Count I of appellees' complaint. The trial court denied CPR Holdings's motion for reconsideration.

On September 16, 2020, CPR Holdings filed its summary judgment motion regarding all counts of its complaint and Counts IV and V of appellants' third amended counterclaim. The trial court granted summary judgment in favor of CPR Holdings on Count V of the third amended counterclaim due to appellants' failure to provide prompt notice to appellees of appellant's intention to rescind the Settlement Agreement. It deferred ruling on all counts of CPR Holdings's complaint. It also denied CPR Holdings's summary judgment motion as to Count IV (to set aside the Settlement Agreement) of the third amended counterclaim.

At the bench trial scheduled for May 2021, the parties agreed to try Counts I-IV of CPR Holdings's complaint and Count IV of appellants' third amended counterclaim. In addition, they agreed to try Counts II and III of the third amended counterclaim (for damages for breach of the Settlement Agreement and damages for breach of implied covenant of good faith).

Ms. Peisach was the only witness to testify for CPR Holdings's case in chief. She testified that during the time of the parties' joint venture, Mr. Intriago was responsible for handling the accounting for the Green Holding

10

subsidiaries. Ms. Peisach testified that he had access to CPR Beverages's bank account and books/records.

Appellants then called Mr. Intriago to testify for their affirmative defenses to CPR Holdings's claims and appellants' main case regarding Counts II, III, and IV of the third amended counterclaim. Mr. Intriago testified to the following: Ms. Peisach was in control of CPR Beverages's assets, accounting books, and records. Nobody from Green Plant entered any accounting data into CPR Beverages's books. The parties shared accounting information during the joint venture. At the time he executed the Settlement Agreement, Mr. Intriago was not concerned with CPR Beverages's assets. He received a balance sheet for CPR Beverages in September 2018 after the lower court case was pending. Mr. Intriago testified that he transferred assets formerly belonging to CPR Beverages back to the Peisaches after CPR Holdings transferred its 50% interest in Green Holdings back to North Bay. He further testified that the Peisaches had possession of all the assets. However, after the trial court requested clarification about the specific assets of CPR Beverages that Mr. Intriago was referencing, Mr. Intriago testified that appellants never received any of the items listed.

Mr. Intriago stated that he moved Green Plant's operation into CPR Beverages's warehouse in September 2016. He used supplies located there

11

even though those supplies belonged to CPR Beverages. After the joint venture ended, Mr. Intriago only removed supplies that he knew belonged to Green Plant. Nobody from CPR Holdings told him that he was not allowed to take certain items.

On cross-examination, Mr. Intriago confirmed that Green Holdings became the owner of CPR Beverages and all its assets when the Operating Agreement was executed in November 2015. His attorney, Mr. Murphree, handled the negotiations beginning in early 2017 that led to the Settlement Agreement, and Mr. Kerry Rosenthal was the attorney handling the negotiations on behalf of appellees. Mr. Intriago's understanding was that because Green Holdings already owned CPR Beverages and its assets at the point the Settlement Agreement was executed in August 2017, there was no need to include provisions in the Settlement Agreement dealing with a transfer of those assets. The trial court took judicial notice that the Settlement Agreement did not specifically address any provisions requiring that the assets of CPR Beverages be transferred to Green Holdings.

Mr. Intriago admitted that each of the deliverables listed in the Settlement Agreement for which CPR Holdings was responsible was delivered to appellants and received by them. He never informed the Peisaches that he was not going to abide by the Settlement Agreement

12

because he was allegedly coerced into it. Mr. Intriago intended to abide by the agreement when he signed it and intended to pay the $175,000.

Mr. Intriago testified that his goal in entering the Settlement Agreement was to gain control over CPR Beverages to resolve an issue with the United States Department of Agriculture over CPR Beverages's organic certification. He admitted that he never took any action to pursue collection of the assets listed on CPR Beverages's balance sheet at any time.

Thereafter, CPR Holdings called Ms. Peisach to testify again when it presented its defenses to appellants' third amended counterclaim. Ms. Peisach testified to the following: throughout the parties' joint venture, Mr. Intriago retained possession of all of CPR Beverages's equipment because Green Plant was handling the juice production. Regarding physical equipment listed on CPR Beverages's balance sheet, at the end of the joint venture, Mr. Intriago was able to take anything he wanted from CPR Beverages's warehouse, including juicing equipment and refrigerators. The leasehold improvements to CPR Beverages's warehouse listed on CPR Beverages's balance sheet consisted of plumbing improvements attached to the real property that could not be removed when CPR Beverages's warehouse lease expired. Throughout the entire venture, Mr. Intriago retained full authority on all bank accounts.

CPR Holdings then called Kerry Rosenthal, Esq. as its final witness to testify at trial. He testified he was retained by the Peisaches to help resolve a corporate dispute involving the joint venture. He drafted the Settlement Agreement at issue and was involved in the negotiations with Mr. Murphree that led to the parties' execution of the Settlement Agreement. He testified that the negotiations between the parties was a collaborative effort, and several drafts of the Settlement Agreement were drawn up so various requests the parties had for inclusion or exclusion of certain terms could be accommodated. He did not recall any of the requests being rejected.

Mr. Rosenthal explained that Mr. Intriago requested access to CPR Beverages's books and records during the settlement negotiations to ensure there were no liabilities that he would be responsible for after North Bay became the sole owner of Green Holdings. He testified that after confirming that the Peisaches agreed to be responsible for those liabilities, Mr. Intriago made no further requests to inspect CPR Beverages's books and records. Mr. Rosenthal then sought Mr. Murphree's approval as of August 25, 2017 to disburse the first $25,000 installment payment after the Settlement Agreement was executed and that Mr. Murphree expressly authorized such disbursement. Thereafter, Mr. Rosenthal emailed Mr. Murphree on

14

November 20, 2017 to advise that the second installment payment was overdue. Mr. Murphree never responded.

Appellants then made their closing arguments, and CPR Holdings followed with its closing. CPR Holdings's counsel then told the trial court that appellants were required to elect between the inconsistent remedies of rescission of the Settlement Agreement or, in the alternative, damages for breach of the Settlement Agreement, as Florida law required the election to be made before the entry of final judgment. The trial court instructed the parties to submit memoranda of law regarding the election of remedies doctrine, which the parties did.

Appellants argued that, in actuality, they were seeking rescission of the Settlement Agreement in Counts II and III of their third amended counterclaim, and thus, the election of remedies doctrine was inapplicable. They argued that although the three remedies in counterclaim Counts II, III, and IV were distinct legal theories, the remedies sought in each count were the same, that is, a determination the settlement agreement and related documents were voidable and unenforceable. In contrast, CPR Holdings contended in its memorandum that Counts II and III of appellants' third amended counterclaim were really damages claims because appellants were confirming in those counterclaims the validity of the Settlement

15

Agreement, which precluded rescission of the Settlement Agreement as matter of law. In their May 27, 2021 memorandum, appellants elected the remedy of rescission.

On December 30, 2021, the trial court circulated its proposed Findings of Fact and Conclusions of Law to the parties and asked them to let the court know if any proposed findings "should be corrected before the order is finalized." In the Proposed Findings, the trial court rejected appellants' rescission claim in Count IV of the third amended counterclaim and awarded damages to appellants on their contractual claims in Counts II and III.

On January 3, 2022, CPR Holdings's counsel reminded the court that appellants' May 27, 2021 election of rescission as their remedy precluded a damage award. In response, appellants filed a memorandum with the trial court on April 15, 2022, where they argued that they had sought damages via their contractual claims and because the Proposed Findings rejected their rescission counterclaim, they were thus awarded "a single remedy" so that the election of remedies doctrine was inapplicable. Appellants also filed a motion asking the trial court to "conform the pleadings" to the evidence adduced at trial. They argued they had a "minor pleading inconsistency" in Counts II and III of the third amended counterclaim, which outlined damages

claims while at the same time requested rescission of the Settlement Agreement in the "wherefore" clauses of Counts II and III.

On June 23, 2022, the trial court entered its Final Judgment. The trial court found that 1) appellants failed to establish duress or coercion as a reason to rescind the Settlement Agreement, thus the agreement was valid and enforceable; 2) CPR Holdings had no contractual obligation under the Settlement Agreement to transfer CPR Beverages's assets; and 3) because CPR Holdings had no obligation to transfer the assets of CPR Beverages, CPR Holdings's failure to do so was not a basis for voiding the Settlement Agreement. Thus, the trial court entered judgment in favor of appellees on Count I through IV of their complaint.

With respect to appellants' counterclaims, the court stated that appellants elected to proceed on their rescission claim and waived their claim for damages. Thus, judgment in favor of appellees was entered on Counts I, III, IV, VII, and VIII of the counterclaims. In addition, the trial court reserved jurisdiction "over Count VI of the Counterclaim and the related separate pending Complaint against Defendant Alberto Peisach pending determination of whether the General Release attached to the Settlement agreement released Alberto Peisach from the stayed fraud in the inducement counts; . . ."

CPR Holdings moved for rehearing regarding the trial court's reservation of jurisdiction decision regarding Mr. Peisach. The trial court denied the rehearing, and this appeal and cross-appeal followed.

In reference to case number 3D23-0311, because the trial court entering final judgment in appellees' favor and the Settlement Agreement's provision for prevailing party attorneys' fees, the trial court entered its Final Judgment Awarding Attorneys' Fees and Costs to appellees. Appellants now appeal this final judgment, as well.

Appellants raise various arguments on appeal. They argue that the trial court misapplied the doctrine of election of remedies to deny them any remedy. They further contend that the trial court erred in holding that CPR Holdings was not obligated to turn over the underlying assets simultaneously with its assignment of all right, title, and interest in the green joint venture; and that the implied covenant of good faith obligates CPR Holdings to deliver the assets of CPR Beverages upon transfer of its interest.

On cross appeal, CPR Holdings contends that the trial court improperly granted Mr. Intriago's summary judgment as to Count I of CPR Holdings's complaint for breach of the Settlement Agreement because Mr. Intriago is individually liable under the Settlement Agreement. It further contends that the trial court's dismissal of Mr. Peisach as a party to North Bay's third

18

amended counterclaim was res judicata, thus precluding the reservation of jurisdiction within the Final Judgment over Count VI of the related case.

## DISCUSSION

## Direct Appeal

## 1.    Election of Remedies

The Florida Supreme Court has stated:

> The election of remedies doctrine is an application of the doctrine of estoppel and operates on the theory that a party electing one course of action should not later be allowed to avail himself of an incompatible course. The purpose of the doctrine is to prevent a double recovery for the same wrong. Under Florida law, however, the election of remedies doctrine applies only where the remedies in question are coexistent and inconsistent. . . . [F]or one remedy to bar another remedy on grounds of inconsistency they must procced from opposite and irreconcilable claims of right and must be so inconsistent that party could not logically follow one without renouncing the other.

Barbe v. Villeneuve, 505 So. 2d 1331, 1332-33 (Fla. 1987) (internal citations omitted).  In addition, for remedies to be coexistent, the issue is whether they arise out of the same set of facts. Goldstein v. Serio, 566 So. 2d 1338, 1340 (Fla. 4th DCA 1990). Thus, if the coexistent remedies are inconsistent, a party's election of one remedy prevents the party's pursuit of the other remedy. "An election between legally inconsistent remedies can be made at any time prior to the entry of judgment." Barbe, 505 So. 2d at 1333. However, importantly, "[i]f the remedies are deemed to be consistent, only *satisfaction*

19

of the claim precludes resort to the alternative remedy, **whereas if they are inconsistent, the event which operates as an election is entry of the final judgment**." Villeneuve v. Atlas Yacht Sales, Inc., 483 So. 2d 67, 70 (Fla. 4th DCA 1986) (italics in original and emphasis supplied). Courts in Florida recognize that the remedies of rescission and damages are coexistent and inconsistent because rescission is premised upon a disavowal of the contract, while a claim for damages is based upon the affirmance of the contract. Bliss & Laughlin Indus., Inc. v. Malley, 364 So. 2d 65, 66 (Fla. 4th DCA 1978); Hustad v. Edwin K. Williams & Co. E., 321 So. 2d 601, 603 (Fla. 4th DCA 1975).

Moreover, "[a] plaintiff is not guaranteed success in the choice of remedies, only an opportunity to proceed under a theory which has been pled." Feinberg v. Naile, 561 So. 2d 1307, 1308 (Fla. 3d DCA 1990). Thus, in Florida, an election is binding and irrevocable even under circumstances where the chosen remedy is improper or nonexistent. Barbe, 505 So. 2d at 1334; Flinn v. Doty, 275 So. 3d 671, 673 (Fla. 4th DCA 2019); United Cos. Fin. Corp. v. Bergelson, 573 So. 2d 887, 888-89 (Fla. 4th DCA 1990).

Based on this foregoing case law, the election of remedies doctrine was applicable to appellants' counterclaims for rescission and damages. Appellants argue that it is error for the trial court to require a premature

20

election. However, appellants' argument is inapplicable here because appellants are relying on cases dealing with the election of remedies doctrine that applies in the context of a jury trial. In a jury trial, the plaintiff is required to choose a remedy after the end of the trial and after the jury has had the chance to resolve any factual issues in dispute. First Nat. Bank of Lake Park v. Gay, 694 So. 2d 784, 786-87 (Fla. 4th DCA 1997). In contrast, the case before us involved a bench trial. Thus, there was no verdict to be returned so that appellants could wait and then elect their remedy.

Appellants' contention that an election would be required "only if the trial court had found for Appellants on both the recission [sic] and breach of contract counts" is meritless. Awarding both rescission and damages to appellants is the double recovery that the election of remedies doctrine is intended to prevent. Barbe, 505 So. 2d at 1332.

2. **Breach of the Settlement Agreement or of the implied covenant of good faith and fair dealing.**

Appellants also contend that the trial court erred in holding that CPR Holdings had no contractual obligation to transfer the assets of CPR Beverages under the Settlement Agreement. We disagree.

In Florida, the trial court cannot make a new contract for the parties. "Where a contract is simply silent as to a particular matter, courts should not,

21

under the guise of construction, impose on the parties['] contractual rights and duties which they themselves omitted." S. Crane Rentals, Inc. v. City of Gainesville, 429 So. 2d 771, 774 (Fla. 1st DCA 1983). In the case before us, the Settlement Agreement does not contain any provisions requiring CPR Holdings and Ms. Peisach to turn over to North Bay assets of CPR Beverages in connection with CPR Holdings's transfer of its 50% interest in Green Holdings to North Bay. Paragraph 2(a) and (b)(i) of the Settlement Agreement outlines what CPR Holdings was required to give to North Bay under the agreement. CPR Beverages's assets are not mentioned there or in any other section of the Settlement Agreement.

Moreover, the November 15 Operating Agreement obligated the parties to each contribute the subsidiary entities and their assets to Green Holdings at the beginning of the joint venture when it began. Thus, pursuant to the Operating Agreement, CPR Beverages's assets had already been conveyed to Green Holdings. Accordingly, Green Holdings already owned all of CPR Beverages and its assets. When the Settlement Agreement was executed in August 2017, CPR Holdings transferred its 50% interest in Green Holdings to North Bay. North Bay then owned 100% of Green Holdings and, consequently, 100% of CPR Beverages and its assets.

North Bay argues that the implied covenant of good faith obligated CPR Holdings to deliver the assets of CPR Beverages upon transfer of its interest. However, like in breach of contract actions, Florida law prevents reliance on the implied covenant of good faith and fair dealing to change the express terms of a binding contract. Flagship Resort Dev. Corp., v. Interval Intern., Inc., 28 So. 3d 915, 924 (Fla. 3d DCA 2010). Thus, the implied covenant of good faith cannot be relied upon by appellants to impose new obligations that are not already expressly included in the Settlement Agreement.

Moreover, Mr. Intriago testified at trial that he was not concerned with CPR Beverages's assets when he executed the Settlement Agreement. He also admitted that there was no need for a provision in the Settlement Agreement for CPR Holdings to transfer CPR Beverages's assets because the assets were already owned by Green Holdings as a result of the Operating Agreement. He testified at trial that in entering the Settlement Agreement, his aim was to gain control over CPR Beverages to resolve the organic certification issue with the USDA. The trial court questioned him during the trial, and Mr. Intriago admitted he never pursued collection of the assets of CPR Beverages.

In addition, Attorney Kerry Rosenthal testified at trial regarding the negotiations during the drafting of the Settlement Agreement. He stated that

several drafts were drawn up and that no requests from appellants relating to any edits were rejected by appellees. He further testified that after Mr. Intriago's worry regarding CPR Beverages's potential liabilities was resolved, he did not raise any other concerns about CPR Beverages's books and records. In sum, the trial court correctly ruled on appellant's contractual claims in Counts II and III of their counterclaims.

## Cross-Appeal

On their first cross-appeal issue, appellees contend that the trial court improperly granted Mr. Intriago's summary judgment as to Count I of CPR Holding's complaint for breach of the Settlement Agreement because Mr. Intriago is individually liable under the Settlement Agreement. In Florida, execution of an agreement by a party as corporate officers and individually indicates an intent to be bound individually. Agia v. Ossi, 249 So. 3d 672, 674 (Fla. 2d DCA 2018). Here, Mr. Intriago signed the Settlement Agreement in his individual capacity and on behalf of Green Holdings and North Bay. Furthermore, Section 2(a) of the Settlement Agreement provides that the $200,000 purchase price is to be paid by Mr. Intriago.

In addition, Section 9 of the Settlement Agreement makes Mr. Intriago individually liable for the purchase price. The provision in Section 9 states that all terms and provisions of the Settlement Agreement are "binding upon

24

. . . the Parties hereto, and their respective predecessors, successors, administrators, representatives, agents, officers, directors, assigns, general partners, limited partners, members, managing members, parents, subsidiaries, affiliates and insurers." Mr. Intriago executed the Settlement Agreement in his capacity as North Bay's manager, thus he is North Bay's representative, agent, and managing member. Because North Bay is liable for the purchase price, which the parties do not dispute, Mr. Intriago is individually liable for the purchase price, and the trial court erred in entering summary judgment in favor of Mr. Intriago on Count I of CPR Holdings complaint.

As to appellees' second issue on cross-appeal, they contend the trial court's dismissal of Mr. Peisach as a party to North Bay's third amended counterclaim was res judicata, thus precluding the reservation of jurisdiction within the Final Judgment over Count VI of the related case. They are correct.

On May 3, 2020, the trial court entered its order dismissing Count VI of the amended counterclaim. Thus, no other claims were pending against Mr. Peisach. Appellants moved for rehearing, which the trial court denied on June 3, 2020. Pursuant to Florida Rule of Appellate Procedure 9.110(k), appellants had thirty days to appeal the dismissal of Mr. Peisach. They did

not. Thus, the dismissal of Mr. Peisach from the litigation in the trial court became final and is res judicata. Falkner v. Amerifirst Fed. Sav. & Loan Ass'n, 467 So. 2d 746, 747 (Fla. 3d DCA 1985) ("Since the dismissal of the complaint constituted a final judgment in the cause [ ] and the plaintiffs did not timely move for rehearing – seeking leave to amend or otherwise – or appeal, the trial court had no choice but to enter the judgment of dismissal now before us on res judicata grounds."); Carnival Corp. v. Sargeant, 690 So. 2d 660, 661-62 (Fla. 3d DCA 1997).

Moreover, because the trial court's June 3, 2020 order denying rehearing was final when appellants did not appeal it within thirty days, appellants' subsequently filed related case is barred by res judicata. It involves the exact same parties and cause of action arising out of the same set of facts as the facts alleged in Count VI of appellants' third amended counterclaim. Maison Grande Condo. Ass'n, Inc. v. Dorten, Inc., 621 So. 2d 762, 764 (Fla. 3d DCA 1993).

## CONCLUSION

For the reasons discussed in this opinion, we affirm the Final Judgment in all respects as to the main appeal in Case Number 3D22-1292. On cross-appeal in that case, the Final Judgment is reversed in part, and we remand the case for judgment to be entered in favor of CPR Holdings and

26

against Mr. Federico Intriago individually as to Count I of CPR Holdings's complaint; and for judgment to be entered in favor of Mr. Alberto Peisach and against appellants as to Count VI of appellants' third amended counterclaim, as well as to the "related separate pending Complaint" referred to by the trial court in the Final Judgment (which has been consolidated at the trial court level with the underlying case). In Case Number 3D23-0311, we affirm the trial court's Final Judgment on attorneys' fees without further discussion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.